393 Mass. 329 (1984)
471 N.E.2d 345
ELLEN D. BUCHANAN & others[1]
vs.
DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY.
Supreme Judicial Court of Massachusetts, Suffolk.
September 12, 1984.
November 19, 1984.
Present: WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.
*330 Matthew E. Dwyer for the plaintiffs.
Charles E. Walker Jr., Assistant Attorney General (Andrew Kisseloff with him) for the defendant.
Phyllis N. Segal, Marjorie Heins & Peggy A. Wiesenberg, for The Civil Liberties Union of Massachusetts & others, amici curiae, submitted a brief.
LYNCH, J.
This case comes before the court from the United States District Court for the District of Massachusetts on certification of a question involving art. 106 of the Amendments to the Massachusetts Constitution, the so called Equal Rights Amendment. See S.J.C. Rule 1:03, § 1, as appearing in 382 Mass. 700 (1981).
The plaintiffs in the civil action in which the question is certified seek redress for denial of unemployment compensation benefits under G.L.c. 151A, § 24 (a). The plaintiffs brought a class action in the Federal court following a determination by the Director of the Division of Employment Security (DES) that they were ineligible for unemployment benefits because of their failure to earn sufficient wages during the base period established by law. See G.L.c. 151A, §§ 1 (a), 24. The plaintiffs allege that the director's decision denying eligibility based on § 24 (a) violated the Federal Unemployment Tax Act, 26 U.S.C. § 3304(a)(12) (1982), the due process and equal protection clauses of the United States Constitution, and the Equal Rights Amendment.
The District Court judge, sua sponte, certified the following question to this court: "Did the Department of Employment Security deny plaintiffs `[e]quality ... because of [their] sex,' Article 106 of Amendments to the Constitution of the Commonwealth, when it denied plaintiffs unemployment benefits because they had failed to meet the base period earnings requirement?"[2] In so doing, the judge stated that "prior decisions of the *331 Massachusetts courts interpreting the Equal Rights Amendment provide scant guidance" and "the base period earnings requirement is part of a complex state regulatory system, and principles of comity and federalism dictate that state, not federal, courts make any necessary decisions under state law." The question is presented by the judge in the context of cross motions for summary judgment.
Prior to September 1, 1981, the three plaintiffs were tenured public school teachers employed by the school committee of Boston. Between 1978 and 1980, each plaintiff became pregnant and was granted an unpaid maternity leave of absence in accordance with the terms of a contract between the school committee and the Boston Teachers Union.[3] The agreement allows a teacher to take an unpaid maternity leave of absence of up to eighteen months.[4] On September 1, 1981, all three plaintiffs were involuntarily separated from their teaching *332 positions by vote of the school committee due to lack of funds. Each plaintiff then applied for unemployment compensation benefits by individually filing claims with DES in accordance with G.L.c. 151A.
General Laws c. 151A, § 24, as amended through St. 1977, c. 720, § 26, prescribes the requirements for eligibility for employment compensation: first, the individual must "[h]ave been paid wages in the base period amounting to at least thirty times the weekly benefit rate, but not less than twelve hundred dollars"; second, the individual must "[b]e capable of and available for work and unable to obtain work in his usual occupation or any other occupation for which he is reasonably fitted"; and third, the individual must "[h]ave given notice of his unemployment ... and ... of the continuance of his unemployment [to DES]."
It is conceded that the plaintiffs met the second and third requirements. The plaintiffs failed, however, to meet the first requirement because they did not earn the requisite minimum $1,200, and thirty times the benefit rate, during the base period. The "base period" is defined as "the period of fifty-two consecutive calendar weeks ending with the day immediately preceding the first day of a claimant's benefit year." G.L.c. 151A, § 1 (a), as amended through St. 1970, c. 703, § 1. Because of the length of the plaintiffs' respective maternity leaves,[5] they did not earn sufficient income during the base period to entitle them to unemployment compensation. The director, therefore, denied their claims. The board of review upheld the director's determination. The plaintiffs subsequently brought suit in United States District Court alleging that the director's determination violated Federal and State statutory and constitutional law.
We address two preliminary matters before turning to the certified question. First, this question has come before the court in a somewhat circuitous fashion. After the plaintiffs were *333 denied unemployment benefits by the director, each plaintiff sought review of the director's decision. G.L.c. 151A, §§ 40, 41. When the board of review affirmed the decisions of the director denying benefits, the plaintiffs failed to obtain judicial review of the decisions in State court. See G.L.c. 151A, § 42.[6] After the appeal period had run, they commenced the action in Federal court and raised their claim under the Equal Rights Amendment as a pendent State claim. As a result, this court is now asked, by way of the certification procedure, to review decisions no longer reviewable under State law since the plaintiffs failed to exercise the right to appeal afforded them under the statute. If the question had reached this court on appeal from the District Court, we might have had the benefit of a more complete factual record.
Second, the director has argued that this court should decline to address the merits of the question in light of the recent decision of the United States Supreme Court in Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984). The director asserts that, under Pennhurst, the Federal court lacks jurisdiction over the State claim because the Eleventh Amendment to the United States Constitution prohibits it from ordering the director of DES to comply with State law. In his brief, the director asserts that the District Court judge denied the director's motion to withdraw the certification and dismiss the State claim because of lack of Federal court jurisdiction. It would appear that Pennhurst raises serious questions whether the Federal court has jurisdiction over the State claim. Since the judge has apparently decided that he has jurisdiction to decide the State claim, we will not refuse to answer the certified question on this basis.
We now turn to an examination of the merits of the question certified to us. In order to answer the certified question, we must perform a two-step analysis. First, does the statutory requirement on its face discriminate against women in violation of the Equal Rights Amendment? Second, if the requirement is *334 constitutional on its face, was the application of the base earnings requirement to the plaintiffs discriminatory and in violation of the Equal Rights Amendment? We respond that G.L.c. 151A, §§ 1 (a) and 24, are constitutional on their face because they do not explicitly establish sex-based classifications. We conclude, however, that the record is insufficient to determine whether the base earnings requirement was applied to the plaintiffs in a discriminatory manner in contravention of their rights under the Equal Rights Amendment.
1. Facial constitutionality. This court has found statutes to be unconstitutional under the Equal Rights Amendment where they explicitly established sex-based distinctions not based upon any compelling State interest. See, e.g., Lowell v. Kowalski, 380 Mass. 663, 666 (1980) (applying strict judicial scrutiny to two statutes basing inheritance rights of illegitimate children on sex of parent, and finding one to be unconstitutionally broad); Attorney Gen. v. Massachusetts Interscholastic Athletic Ass'n, 378 Mass. 342, 354-357 (1979) (rule prohibiting male participation on girls' sports teams held invalid under the Equal Rights Amendment).
Here, however, no sex-based distinctions can be found in the statute. Sections 1 (a) and 24 of G.L.c. 151A employ no language suggesting differential treatment between men and women. The unemployment compensation scheme embodied in G.L.c. 151A is based upon the applicant's past earnings. It applies in a uniform fashion to all applicants, regardless of sex or the purpose of any leave of absence taken. Any distinction between applicants is simply between those individuals who are ineligible under § 24 (a) because of lengthy leaves of absence, regardless of the reasons for those leaves, and those eligible employees who do not voluntarily leave the work force for an extended period. All applicants who take extended leaves are similarly situated and are entitled to unemployment compensation only if they earned the requisite minimum of past earnings. It is not the gender of the applicant or the cause of the leave of absence which may render an applicant ineligible, but rather the length of the absence from the work force. It should be noted that the minimum earning period of thirty weeks is not so long as to exclude automatically any teacher taking maternity leave.
*335 2. Constitutionality as applied. Statutes that are not discriminatory according to their terms still may be found to deny equality under the law if they are applied in a discriminatory fashion. See, e.g., School Comm. of Braintree v. Massachusetts Comm'n Against Discrimination, 377 Mass. 424, 431-432 (1979) (facially neutral school policy found to be unconstitutionally discriminatory against women); School Comm. of Springfield v. Board of Educ., 366 Mass. 315, 327 (1974), cert. denied, 421 U.S. 947 (1975) (facially neutral action by Legislature or school committee may result in racial imbalance in violation of arts. 1 and 10 of Massachusetts Declaration of Rights). The plaintiffs have argued that the base earnings requirement, as applied to them, denies them equality under the law in violation of the Equal Rights Amendment because it discriminates against them on the basis of pregnancy. They contend further that the requirement has a disproportionately adverse impact on women who, for maternity reasons, are more likely than men to take extended unpaid leaves. They also argue that the application of the requirement to women who take unpaid maternity leaves reinforces patterns of discrimination against women.
The record is devoid of any factual findings as to a disparate impact on, or treatment of, women as a result of the base earnings requirement.[7] A showing of such disparity is a prerequisite to scrutiny by this court of the constitutionality of the statute as applied to the plaintiffs. See School Comm. of Braintree v. Massachusetts Comm'n Against Discrimination, supra at 428-429.
In summary, we answer that the provisions of G.L.c. 151A, §§ 1 (a) and 24, do not, on their face, deny the plaintiffs equality because of their sex.
NOTES
[1] The other plaintiffs are Donna M. Glaser and Judith A. Brennan. The three plaintiffs brought suit individually and as a class. We acknowledge the amicus brief filed on behalf of the The Civil Liberties Union of Massachusetts, The Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association, The Women's Bar Association of Massachusetts, the NOW Legal Defense and Education Fund, and The Women's Law Project.
[2] The entire certified question is as follows: "M.G.L.c. 151A, § 24 (a) requires that an employee, to be eligible for unemployment benefits, must have earned thirty times her weekly unemployment benefit entitlement, but not less than $1,200, during the twelve months prior to the first day of the employee's benefit year. Plaintiffs in this action failed to earn the requisite amount because they took unpaid maternity leaves, as allowed under their employment contracts, during that twelve month period. Did the Department of Employment Security deny plaintiffs `[e]quality ... because of [their] sex,' Article 106 of Amendments to the Constitution of the Commonwealth, when it denied plaintiffs unemployment benefits because they had failed to meet the base period earnings requirement?"
[3] Buchanan was granted an unpaid maternity leave from July 1, 1980, until May 12, 1981, at which time she returned to work; Glaser was granted an unpaid maternity leave from November 30, 1978, through August 31, 1981; Brennan was granted an unpaid maternity leave from January 1, 1979, through August 31, 1981.
[4] Article IV, § 8(g), of the contract, as quoted from the judge's memorandum, provides in relevant part: "(2) Any teacher shall be eligible to use accumulated sick leave for disability caused by pregnancy or childbirth and recovery therefrom ... (3) Any teacher who is pregnant shall, upon request, be given a maternity leave of absence without pay; provided, that a teacher shall be eligible to use accumulated sick leave for such portion of the maternity leave of absence for which her physician certifies that she was not in fit condition for service due to disability caused by pregnancy or childbirth and recovery therefrom.... (6) The teacher, after delivery or if the pregnancy is of shorter duration than expected, may be permitted by the Superintendant to return to work at any time. She shall, however, be permitted to return to work upon notifying, in writing, no less than two weeks in advance of her return, the Superintendant and her principal ... (7) No maternity leave of absence combined with any sick leave for disability caused by pregnancy or childbirth and recovery therefrom shall exceed eighteen months...."
[5] Buchanan's leave of absence lasted for ten and one-half months; Glaser's and Brennan's leaves of absence extended for thirty-three and thirty-two months, respectively.
[6] Under G.L.c. 151A, § 42, appeal may be taken directly from the decision of the District Court judge to this court.
[7] In fact, under art. IV, § 8(g) (2), of the contract between the Boston Teachers Union and the school committee, "[a]ny teacher" may take a leave of absence because of disability caused by pregnancy. The opportunity to take a leave of absence may be available to all teachers, regardless of sex. This provision may allow a father to take maternity leave because of a disability caused to his wife by pregnancy. If the contract is so interpreted, the earnings requirement could prevent both men and women teachers who take leaves under art. IV, § 8(g), from collecting unemployment compensation.